IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TAMMY L. RUSSELL,
    Plaintiff,

vs.                                              Case No.: 5:11cv165/RH/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]
    Defendant.
_____/

## AMENDED ORDER and REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and this action should be remanded for further administrative proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Michael J. Astrue as the Defendant in this case.

I.      PROCEDURAL HISTORY

On August 13, 2004, Plaintiff filed applications for DIB and SSI, and in both applications she alleged disability beginning January 1, 2000 (tr. 24).[2] Her applications were denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 1, 2007, and on October 24, 2007, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (tr. 24–30). On October 24, 2007, Plaintiff requested review by the Appeals Council ("AC") (tr. 6), and thereafter submitted to the AC additional materials for its consideration (*see, e.g.*, tr. 3A). On February 17, 2009, the AC denied Plaintiff's request for review (tr. 4, 6), which made the decision of the ALJ the Commissioner's final determination, subject to review in this court. *See* Poellnitz v. Astrue, 349 F. App'x 500, 501 (11th Cir. 2009) (unpublished) ("When the ALJ denies benefits and the AC denies review, we generally review the ALJ's decision as the Commissioner's final decision."); *see also* Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262, 1265–66 (11th Cir. 2007) ("a reviewing court must consider whether that new evidence [submitted to the AC] renders the denial of benefits erroneous").

On May 2, 2011, more than two years after the AC denied review, it granted Plaintiff's request for additional time within which to seek review in this court (tr. 4 (extending filing deadline to June 6, 2011)). Plaintiff then commenced this action by filing a complaint on June 6, 2011 (*see* doc. 1). On October 13, 2011, prior to filing an answer to the complaint, the Commissioner filed a motion to remand, pursuant to sentence six of 42 U.S.C. § 405(g), because a recording of Plaintiff's March 1, 2007, hearing before the ALJ could not be located (doc. 11). The Commissioner's motion was granted, and this case was remanded for further administrative proceedings (docs. 12, 13). On January 24, 2013, the Commissioner filed an answer to the complaint and a certified copy of the transcript of the administrative proceedings below, including a transcript of Plaintiff's hearing before the ALJ. The merits of Plaintiff's complaint are now ripe for review.

---

[2] All references to "Tr." refer to the transcript of Social Security Administration record filed on January 24, 2013 (docs. 21–25). Moreover, the page numbers refer to those found on the upper right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

II.   FINDINGS OF THE ALJ

In her written decision issued October 24, 2007, the ALJ made the following, relevant findings (*see* tr. 24–30):

1)   Plaintiff met the insured status requirements of the Act through June 30, 2001.[3]

2)   Plaintiff has not engaged in substantial gainful activity since January 1, 2000, the alleged onset date.

3)   Plaintiff has one severe physical impairment, human immunodeficiency virus ("HIV"); she has no severe mental impairment.

4)   Plaintiff has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5)   Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work and thus can return to the work she previously performed at or below this level of exertion, including her work as certified nursing assistant ("CNA") (medium), cook (medium), cashier (light), and day care worker (light). Plaintiff, therefore, was not under a disability, as defined in the Act, between January 1, 2000, and October 24, 2007.

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but is less than a preponderance," Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted), and "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). "Even if the evidence preponderates against the Commissioner's findings," the Commissioner's decision must be affirmed if it is supported by substantial evidence. *Id.* at 1158–59 (quotation marks and citations omitted). "The court need not

---

[3] Thus, the time frame relevant to Plaintiff's claim for DIB is relatively short, that is, from January 1, 2000 (alleged onset) through June 30, 2001 (date last insured). The time frame most relevant to her claim for SSI is longer, that is, from August 13, 2004 (the date she applied for SSI) through October 24, 2007 (the date the ALJ issued her decision). *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

Case No.: 5:11cv165/RH/EMT

determine whether it would have reached a different result based upon the record," Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991), and should not substitute its judgment for that of the Commissioner. Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982).

A claimant applying for disability benefits must prove she is disabled. 20 C.F.R. § 404.1512[4]; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). At the first step, the claimant must show that she has not engaged in substantial gainful activity. Jones, 190 F.3d at 1228. At the second step, she must prove she has a severe impairment or combination of impairments. At step three, if her impairment meets or equals a listed impairment, she is automatically found disabled. If her impairment does not meet or equal a listed impairment, she must prove, at step four, that she is unable to perform her past relevant work. Finally, if a claimant proves she cannot perform her past relevant work, the burden shifts to the Commissioner at step five to show that there is other work available in significant numbers in the national economy that the claimant is able to perform. *Id.*

In this appeal, Plaintiff alleges the ALJ erred: (1) in failing to find her mental impairments severe; (2) by rejecting the opinion of Thair Khan, M.D., a physician who examined Plaintiff at the Commissioner's request; (3) in failing to address the opinion of a nurse practitioner and "to otherwise consider significant medical evidence documenting Plaintiff's [HIV-related and medication-related symptoms]"; and (4) in rejecting Plaintiff's subjective complaints (doc. 33). Additionally, while not stated directly, Plaintiff evidently challenges the AC's denial of her request for review (*see, e.g.*, *id*. at 14, asserting that the evidence presented to the AC demonstrates that Plaintiff's mental impairment is severe and the ALJ erred in concluding otherwise).

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:11cv165/RH/EMT

IV.     RELEVANT EVIDENCE OF RECORD[5]

    A.     Evidence of Record at the Time the ALJ Issued Her Decision

Plaintiff was born on August 4, 1969, completed eleventh grade in special education classes, has past relevant work as a CNA, cook, cashier, and day care worker, and was well under the age of fifty during the time frame relevant to this appeal (tr. 29, 174–75, 179).

From 2000 to 2002, Plaintiff received chiropractic treatment from Isa Belion, D.C., for pain related to mild scoliosis of the thoracic and lumbar spine (tr. 203–14; *see also* tr. 215, results of thoracic and lumbar spine s-rays, obtained May 1, 2000, reflecting mild scoliosis). On May 3, 2000, Chiropractor Belion released Plaintiff to "light work" with lifting no more than twenty pounds (tr. 209).

In September 2001 Plaintiff sought medical attention after being exposed to HIV, and the HIV infection was confirmed with a positive Western Blot test (tr. 386–87). Plaintiff received treatment for HIV during the time frame relevant to her claim for SSI and was prescribed various medications as part of this treatment (*see, e.g.*, doc. 33 at 3–7). The HIV treatment records reflect Plaintiff's complaints of various symptoms related to the HIV and various side effects from the prescribed medications she took to treat it (*id.*).

On February 26, 2004, Plaintiff presented to the Bay County Health Department ("BCHD") for continued care and follow-up related to the HIV (tr. 287). The treatment notes reflect that Plaintiff would be referred to the Panama City Counseling Center (tr. 287), and that she was prescribed Xanax, along with other medications (tr. 288). On July 29, 2004, Plaintiff returned to the BCHD and reported she had "been dealing with some depression" related to losing custody of her daughter and being prohibited from having unsupervised visits with her daughter (tr. 256). Plaintiff, however, stated she did not "feel ready" to go to a counselor and thus had not followed through on the referral to the Panama City Counseling Center; she also sated she feared that if she went to counseling, "it would be held against her in future custody battles" (*id.*).

On October 5, 2004, Plaintiff was evaluated by James Hord, Ph.D., at the Commissioner's request (tr. 442–45). Plaintiff reported a history of mental health services as a child, but not as an

---

[5] Although Plaintiff raises several claims for relief, the court largely focuses on the evidence that relates to her mental impairment(s), as this evidence underlies the undersigned's recommendation for remand.

adult (*id.*). Plaintiff told Dr. Hord she was depressed and "stayed at home" (tr. 443). Dr. Hord described Plaintiff's mood and affect as depressed, but he noted that otherwise her mental status was within normal limits (tr. 443–44). He also stated, "I do not doubt that depression is a significant problem for her although here in the office she handled herself well" (tr. 444). Dr. Hord administered the Wechsler Adult Intelligence Scale, which resulted in a verbal intelligence quotient ("IQ") score of 79, a performance IQ score of 91, and a full scale IQ score of 84 (*id.*). Dr. Hord noted, "[c]onsidering her level of fatigue and her somewhat reduced intellectual ability I am sure it would be difficult for her to be competitive in the work place at this point," and he opined that Plaintiff will become more limited "as her condition [presumably, the HIV] deteriorates" (*id.*). Dr. Hord assessed personality disorder, not otherwise specified ("NOS"); major depression, recurrent, mild; and a Global Assessment of Functioning score ("GAF") of 60[6] (tr. 445).

On October 7, 2004, Eric Martin, Ph.D., a non-examining agency psychologist, completed a form titled Psychiatric Review Technique ("PRT") (tr. 428–40). He evaluated Plaintiff's impairments under Section (or "Listing") 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Affective Disorders) and Listing 12.08 (Personality Disorders) (tr. 428, 431, 435). Dr. Martin found that Plaintiff's "Depressive Disorder NOS, mild" is not severe and does not satisfy the diagnostic criteria necessary to qualify as disabled under § 12.04, and he made the same finding as to Plaintiff's "Provisional Personality Disorder NOS" under § 12.08 (tr. 431, 435). In support of these findings, Dr. Martin concluded that Plaintiff's impairments cause mild restrictions in activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (tr. 438). Dr. Martin specifically noted that his opinions relate to Plaintiff's "current" condition, that is, her condition on or about October 7, 2004 (tr. 428). He also explained that his opinions are based, in part, on Plaintiff's lack of adult

---

[6] Global assessment of functioning is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 30–32 (4th ed. 1994). It may be expressed as a numerical score. *Id.* at 32. A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* A score in the range just above Plaintiff's, that is, between 61 and 70, reflects some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. *Id.*

mental health treatment, Dr. Hord's examination, and Plaintiff's ability to engage in a wide range of activities of daily living and to interact socially (tr. 440).

On March 26, 2005, Jane Cormier, Ph.D., a non-examining agency psychologist completed a PRT that reflects Plaintiff's "current" condition, and Dr. Cormier rendered opinions that are largely the same as those of Dr. Martin (*see* tr. 322–34).

On April 19, 2005, Plaintiff was examined by Joel G. Prather, Ph.D. (tr. 199) (it appears that this was a consultative examination conducted at either the Commissioner's request or the request of Plaintiff's attorney (*see* tr. 199, 570; *see also* doc. 34 at 4)). Dr. Prather noted that Plaintiff presented with "moderate to severe" depression, anxiety symptoms, and "possible symptoms" of bipolar disorder (tr. 199). He also commented that Plaintiff "displayed some inappropriate thought content, anger, hostility, was restless and fidgety, and had some memory impairment, both recent and remote" (*id.*).

A BCHD treatment note dated April 28, 2005, reflects that Plaintiff was diagnosed with depression and prescribed Zoloft (tr. 281, 288). BCHD treatment notes from October 11, 2005, reflect that Plaintiff would be referred to "Life Management" and that she was to continue on Zoloft (tr. 285). The Zoloft was again continued in January and February 2006 (tr. 285, 288), although in February the dosage was increased (tr. 284). Subsequent BCHD treatment notes reflect continued prescriptions for Zoloft for the treatment of Plaintiff's depression (*see, e.g.*, *id.*).

Dr. Prather examined Plaintiff a second time, on March 6, 2007 (tr. 199). He noted "little change in her biopsychosocial interview as compared to the first" (*id.*). He also commented that Plaintiff's "affective symptoms appear more Bipolar than major depression at this point" and that, "[i]f anything, her condition ha[d] worsened" (*id.*). He opined that Plaintiff's "continuous and prolonged behaviors are permanent and severely interfere with her daily life" (*id.*). Dr. Prather then completed a form on which he indicated that Plaintiff met the A, B, and C criteria of Listing 12.04 (*see* tr. 199–201). More specifically, Dr. Prather opined, with regard to the A criteria, that Plaintiff exhibited anhedonia, appetite disturbance (due HIV medications), sleep disturbance, decreased energy, difficulty concentrating, and manic symptoms including hyperactivity, pressure of speech, flight of ideas, "[e]asy distractibility," and involvement in activities that have a high probability of painful consequences which are not recognized (tr. 200). With regard to the B criteria, Dr. Prather

found that Plaintiff has marked restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace (tr. 201). And as to the C criteria, Dr. Prather opined that Plaintiff has a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities," with repeated episodes of decompensation, and "such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause [her] to decompensate" (*id.*; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing 12.04)).

B. Evidence Submitted to the Appeals Council after the ALJ Issued Her Decision

On May 28, 2008, Plaintiff returned to Dr. Prather for an "updated assessment and biopsychosocial," which included a mental status examination "to determine memory, orientation, and [risk of suicide]" (tr. 571). After examining Plaintiff, Dr. Prather opined that her mental health had deteriorated since he last saw her, and that she was "experiencing a severe mental disorder" with a "moderate level of pathology" (tr. 569, 571). In describing Plaintiff's clinical symptoms, Dr. Prather explained that Plaintiff was experiencing "a severe psychotic episode characterized by bizarre thinking and fragmented emotions" with a "continued degradation of thoughts and behaviors" (tr. 572). He noted Plaintiff's "pronounced diminished capacity for pleasure, preoccupation with lessened energy and adequacy, pessimism, suicidal ideation, loss of confidence, feelings of worthlessness, resentments, and fears" (*id.*). Dr. Prather diagnosed a mood disorder NOS, schizoaffective disorder, generalized anxiety disorder, and somatization disorder with a schizotypal personality disorder (*id.*). In the "Implications" section of his report, Dr. Prather stated:

> [Plaintiff] is a very sick woman. Her psychological issues are numerous and serious. These maladaptive behaviors and conditions are the result of a lifetime of dysfunctional families,[7] chronic mental illness, possibly inherited traits. . . . Although being infected with the HIV virus certainly exacerbated these psychological problems, clearly all of these problems existed before [she] contracted HIV. It is quite possible that her mental state and the risky, self-destructive behaviors, were actually a cause of her contracting HIV.

---

[7] Plaintiff advised Dr. Hord, and presumably Dr. Prather, that she had been raped or sexually abused by a caregiver at age five, by a cousin at age fifteen (who also allegedly raped Plaintiff's sister), and by an ex-husband at age twenty (*see* tr. 443).

Case No.: 5:11cv165/RH/EMT

> Based on the severity and nature of [Plaintiff's] mental health problems, I would have no problem stating that [she] had many of her mental problems for at least 10 years . . . . It is likely that her Mood Disorder (Bi-Polar disorder is a form of Mood Disorder) would date back to 1986 or 1988. It is not likely that [she] ever did, or ever will, hold down a full-time, productive, steady job of the most minimal standards.

(*id.*). Dr. Prather, who by now had examined Plaintiff on three occasions, also completed a Medical Source Statement regarding her ability to perform work-related mental activities (tr. 573–75). Dr. Prather opined that Plaintiff had "marked" or "extreme" limitations in nearly all areas of mental functioning, that her mental impairments would cause her to miss work more than three times a month, and that her mental limitations have existed "her entire adult life" (*see id.*). Dr. Prather assessed a GAF score of 49[8] and referred Plaintiff to the Life Management Center ("LMC") for treatment (tr. 570).

Plaintiff presented the LMC on June 3, 2008 (tr. 562). She advised staff—as she had advised Dr. Prather (*see* tr. 569)—that BCHD would no longer prescribe medications for her mental impairments and that another entity, such as the LMC, would need to monitor her mental condition and prescribe medications for it (tr. 562). Plaintiff reported to LMC staff ongoing depression, sleep problems, fatigue, anger, anxiety, and social problems (*id.*). Upon evaluation, she was noted to be markedly depressed and angry and moderately anxious with a slightly abnormal speech pattern (*see* tr. 565). Additionally, her thought processes were abnormally inhibited, with rapid or racing thoughts; she had moderate difficulty acknowledging and understanding her psychological problems; she was moderately impaired in her ability to manage activities of daily living; and she was markedly impaired in her ability to make reasonable life decisions (tr. 567). LMC staff diagnosed bipolar disorder and anxiety disorder and assessed a GAF score of 50 (*id.*). Additional treatment and evaluation were recommended (*see* tr. 568).

V. DISCUSSION

    A. ALJ's Finding at Step Two

---

[8] A GAF score between 41 and 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 30–32 (4th ed. 1994).

As previously noted, the ALJ found at step two of the sequential evaluation that Plaintiff's HIV was a severe impairment, but she concluded that Plaintiff's depression was not. Plaintiff contends the ALJ erred in failing to find that she had a severe mental impairment.

At step two of the sequential evaluation process, a claimant must prove that she is suffering from a severe impairment or combination of impairments, that have lasted (or must be expected to last) for a continuous period of at least twelve months, and which significantly limit her mental (or physical) ability to perform "basic work activities." *See* 20 C.F.R. §§ 404.1509, 404.1520(c) 404.1521(a). Basic work activities include physical functions, not at issue here, and mental functions such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account"). Although the claimant carries the burden at step two, the burden is mild. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ( "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "her impairment is not so slight and its effect is not so minimal." *Id.*

The regulations mandate specific procedures for evaluating mental impairments. *See* 20 C.F.R. § 404.1520a; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 *et seq.*. Listing 12.00 addresses various potentially disabling mental impairments and instructs that the listing for each impairment begins with a narrative statement describing the disorder. Listing 12.00 then requires evaluation of two sets of criteria known as "Paragraph A" and "Paragraph B" criteria. Paragraph A criteria relate to medical findings. Paragraph B criteria address impairment-related functional limitations in four broad functional areas: activities of daily living; social functioning; concentration, persistence and pace; and repeated episodes of decompensation (*see, e.g.*, Listing 12.00C). Generally, a mental

impairment is deemed non-severe at step two if the degree of limitation in the first three functional areas is "none" or "mild," and the degree of limitation in the fourth area is "none," "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Here, in evaluating Plaintiff's mental impairments and reviewing the evidence related to those impairments, the ALJ stated—and only stated—as follows:

> The claimant has also alleged disability based in part on an affective disorder; however, the objective evidence shows records from [the BCHD] indicate [sic] that the claimant has been prescribed the anti-depressant, Zoloft, for her affective disorder. At the time of the claimant's date last insured, June 30, 2001, the state agency physicians found there was insufficient evidence to show an affective disorder. On March 26, 2005, the State Agency designed [sic] physician[] found that the claimant has no "severe" mental health impairment. As [Dr. Cormier's] opinion is consistent with the objective evidence of record, it is given great weight. Therefore, it cannot be found that an affective disorder is a "severe" impairment as that term is defined in the [S]ocial Security Act and Regulations.
>
> * * *
>
> Regarding the claimant's mental health, Dr. Prather, on March 8, 2007, reported that the claimant's mental health met the criteria of Listing 12.04. As the claimant has been found to have no "severe" mental health impairment, this is a moot point.

(tr. 27).

The ALJ committed several errors in evaluating Plaintiff's mental impairments. First, although the ALJ correctly found that no evidence of record supports a finding of a severe mental impairment prior to June 30, 2001 (Plaintiff's date last insured for DIB purposes), the ALJ erred in relying on Dr. Cormier's opinions to find that Plaintiff had no severe mental impairment during the entire time frame relevant to her claim for SSI (i.e., from August 13, 2004, through October 24, 2007). As noted *supra*, Dr. Cormier specifically stated that her opinions concern Plaintiff's "current" condition, that is, her condition as of March 26, 2005. Thus, Dr. Cormier's opinions do not address Plaintiff's condition during the remaining, relatively lengthy period of the relevant time frame (i.e., from March 26, 2005, forward). Second, ALJ erroneously found that Dr. Prather's opinions, rendered on March 8, 2007, are "moot." The ALJ was required to consider the evidence from Dr. Prather and other sources in determining whether Plaintiff has a severe mental impairment, not first decide that

Plaintiff has no severe mental impairment and then reject all contrary evidence or opinions as "moot points."

Furthermore, the ALJ failed to consider—<u>or even mention</u>—other evidence relevant to the evaluation of Plaintiff's mental impairments, including: (1) Dr. Hord's examination of Plaintiff on October 5, 2004, which resulted in (a) diagnoses of personality disorder and major depression, recurrent, mild, and (b) opinions that "it would be difficult for [Plaintiff] to be competitive in the work place at this point" and that Plaintiff would become even more limited in the future[9]; and (2) the observations of Dr. Prather, on April 19, 2005, that Plaintiff presented with moderate to severe symptoms of depression and possible symptoms of bipolar disorder, and she displayed issues with memory, thought content, and behavior. Third, the ALJ failed to follow the specific procedures that are mandated for evaluating mental impairments. Although the ALJ gave "great weight" to the opinions of Dr. Cormier, and this court could extrapolate from Dr. Cormier's PRT the findings the ALJ was required to make, such an exercise would be futile because Dr. Cormier's opinions do not address Plaintiff's condition after March 2005. For all of these reasons, the ALJ erred at step two of the sequential evaluation in evaluating Plaintiff's mental impairments. Moreover, this court cannot find that the ALJ's error was harmless (e.g., the ALJ included no mental restrictions in the RFC and failed to explain why none were included; the ALJ provided no rationale for failing to consider (and/or impliedly rejecting), the opinions of Dr. Hord). Therefore, a remand for further administrative proceedings, pursuant 42 U.S.C. § 405(g), is warranted.[10]

---

[9] The ALJ's failure to consider the opinions of Dr. Hord, an examining psychologist, is especially troubling in light of her decision to fully credit the opinions of Dr. Cormier, a non-examining agency psychologist. The opinion of a non-examining source should not be accepted over that of an examining source without explanation. *See* 20 C.F.R. § 404.1527(c) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *see also* Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988) ("'The opinions of nonexamining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.'") (quoting Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987)). "Clearly the weight accorded the observations of the nonexamining physicians by the Secretary was inconsistent with the proper legal procedure. This procedural error compounds and highlights the incorrectness of the Secretary's decision." Lamb, 847 F.2d at 703 (commenting on the Appeals Council's placing considerable weight on the reports of two non-examining agency physicians over those of physicians who examined the claimant repeatedly over an extended period of time).

[10] The court is wholly unpersuaded by the Commissioner's post-hoc rationalizations to explain the ALJ's finding at step two (*see, e.g.*, doc. 34 at 4–5, arguing that Plaintiff's failure to seek mental health treatment indicates that her affective disorder is non-severe). "[A] court may not accept appellate counsel's post hoc rationalizations for agency actions. . . . If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." Baker

Upon remand, the ALJ should begin the sequential evaluation anew and evaluate Plaintiff's mental impairments in accordance with the Regulations. In doing so, she must consider all of the relevant evidence of record including, but not limited to, Dr. Hord's opinions, Dr. Prather's opinions, the BCHD records (which, as of April 2005 include diagnoses of depression and prescriptions for Zoloft and Xanax (the latter of which prescription was not mentioned by the ALJ)), in addition to the opinions of the non-examining agency psychologists.

B.      Evidence Submitted to the Appeals Council[11]

When, as here, a claimant has properly presented new evidence to the AC, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous. Ingram, 496 F.3d at 1262. Plaintiff contends that the new evidence she submitted to the AC—Dr. Prather's updated assessment, medical source statement, and updated opinions, as well as the records of the LMC—render the decision of the ALJ to deny benefits unsupported by substantial evidence. The court agrees.

A social security claimant generally is permitted to present new evidence at each stage of the administrative process. *See* 20 C.F.R. § 404.900(b); *see also* Ingram, 496 F.3d at 1261. The AC has the discretion not to review the ALJ's denial of benefits. 20 C.F.R. § 404.967. However, the AC must consider "new and material evidence" that "relates to the period on or before the date of [the ALJ] hearing decision" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

There are two methods of remand under § 405(g)—"sentence four remands" and "sentence six remands." Ingram, 496 F.3d at 1261.[12] A sentence four remand is appropriate when the claimant submitted new evidence to the AC, which the AC did not adequately consider in denying the

---

v. Comm'r of Soc. Sec., 384 F. App'x 893, 896 (11th Cir. 2010) (unpublished) (citing FPC v. Texaco Inc., 417 U.S. 380, 397, 94 S. Ct. 2315, 2326, 41 L. Ed. 2d 141 (1974)).

[11] The court addresses this ground for relief because it is related to the first, and because it provides an additional justification for remanding this case for further administrative proceedings.

[12] The fourth sentence of § 405(g), which is applicable here, provides the federal court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

Case No.: 5:11cv165/RH/EMT

claimant's request for review. *Id.* at 1268. To obtain a sentence four remand, the claimant must show that, in light of the new evidence submitted to the AC, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. *Id.* at 1266–67; *see also* 20 C.F.R. 404.970(b) (the AC must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record").

Here, the updated opinions and report of Dr. Prather, relating to his examination of Plaintiff on May 28, 2008, are "new and material" and relate to the period on or before October 24, 2007, the date of the ALJ's decision. Dr. Prather's examination in 2008 was his third of Plaintiff, and it resulted in opinions that Plaintiff's condition had significantly worsened over time (which is consistent with Dr. Hord's prediction), including during the relevant period, and that Plaintiff was markedly or extremely limited in her ability to function and had been for at least ten years. This evidence (especially considered alongside the evidence ignored by the ALJ), shows that the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. *See* Ingram, 496 F.3d at 1266–67. Thus, a remand pursuant to sentence four of § 405(g) is warranted.

VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is not supported by substantial evidence and should be reversed and remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[13]

Accordingly, it is **ORDERED**:

Carolyn W. Colvin is substituted for Michael J. Astrure as Defendant in this action.

And it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **REVERSED**, and that this action be **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[13] The undersigned notes that the evidence of record concerning Plaintiff's physical and mental condition prior to June 30, 2001 (her date last insured) does not appear to render erroneous the ALJ's denial of Plaintiff's claim for DIB. However, the undersigned declines to recommend affirming only part of the ALJ's decision, as there is some medical evidence of record dated prior to June 30, 2001, and Dr. Prather's most recent (retrospective) opinions relate to that time frame as well. Thus, the ALJ should reconsider Plaintiff's claim for SSI and DIB, although the court acknowledges that the ALJ might reasonably conclude that the record does not establish Plaintiff's entitlement to DIB.

At Pensacola, Florida this 20th day of November 2013.


                           /s/ *Elizabeth M. Timothy*
                           **ELIZABETH M. TIMOTHY**
                           **UNITED STATES MAGISTRATE JUDGE**


### **NOTICE TO THE PARTIES**

       **Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**